2024 IL App (1st) 240390-U

Nos. 1-24-0390B, 1-24-0392B, 1-24-0691B, and 1-24-0692B (cons.)

Order filed August 7, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 23 CR 11239 |
| | ) | 21 CR 8251 |
| MICHAEL EVANS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Patrick K. Coughlin, |
| | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment, denying a motion to reconsider an order which determined defendant should remain detained pretrial, is affirmed.

¶ 2    Defendant Michael Evans is charged with 14 counts of violating animal owner duties in case number 21-CR-8251 and one count of possession of a stolen motor vehicle and four counts of stalking in case number 23-CR-11239. Defendant filed two notices of appeal on February 6,

2024, one for each case, after the trial court denied his petition for release pursuant to section 110-6.1(i-5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(i-5) (West 2022)). Defendant then filed a motion to reconsider the trial court's order, and subsequently filed two more notices of appeal upon the trial court's denial of that motion. On June 18, 2024, we granted defendant's motion to consolidate all four appeals. Defendant now argues that the trial court erred in denying his motion to reconsider the February 6, 2024 judgment.

¶ 3     For the following reasons, we affirm the judgment of the trial court.

¶ 4                                I. BACKGROUND

¶ 5     On September 24, 2020, the State charged defendant with aggravated animal cruelty and defendant was subsequently released on bond. The complaint was later superseded by a 14-count indictment on June 17, 2021, which alleged that defendant repeatedly violated animal owner duties. Defendant remained on bond until September 27, 2023, when he was arrested and charged with stalking and possession of a stolen motor vehicle. On September 28, 2023, the State filed a petition to revoke defendant's pretrial release as to the animal owner duties case, and a petition for pretrial detention as to the stalking and possession of a stolen motor vehicle case.

¶ 6     Though defendant is not appealing the order that initially detained defendant and revoked his bail, the factual proffers given by both parties provide a thorough summary of the facts of this case as alleged, which we recite here.

¶ 7     On September 21, 2020, animal control received multiple anonymous complaints which led them to investigate defendant's home. In the backyard, they found a deceased male pitbull in a kennel. Feces and urine covered the kennel, and there was no available food or water. The dog's body was covered in feces, urine, and fleas. After obtaining a search warrant, officers entered the

home and discovered multiple dogs in wire crates in the basement with no water and, in some cases, no food. The basement was covered in urine and feces, and most of the dogs were thin and covered in sores.

¶ 8 In early 2023, defendant began dating the complaining witness. That relationship ended on August 29, 2023, at which time defendant took the complaining witness's car without her permission. In the following days, defendant repeatedly called and texted the complaining witness to ask her about her life and places she had been. Though the proffer does not specify when some of these incidents occurred, the complaining witness reported multiple instances of defendant trying to gain access to her car or apartment, being accosted by him while she was eating with her daughter at a Culver's, or being followed by defendant when she picked her daughter up at school.

¶ 9 The complaining witness recovered her car after defendant told her to meet him at a hotel. When she arrived, he directed her to a second location and an argument ensued. After the complaining witness recovered her car, defendant followed her for a time before giving up the pursuit. The complaining witness sought and was granted an order of protection against defendant on September 5, 2023, which the State claimed was served on defendant following a traffic stop.

¶ 10 Defendant was ultimately arrested after he followed the complaining witness to her daughter's school again. The complaining witness called the police and followed defendant until officers stopped defendant and the complaining witness identified him as the man who had taken her car. Defendant has prior convictions for stalking in 2015 and animal cruelty in 2013 and 2014. He was also convicted of a felony drug case in 2000 for which he served six years in the Illinois Department of Corrections.

¶ 11    According to defendant's proffer, he was 55 years old at the time of the hearing and a lifelong resident of Chicago. A high school and college graduate, defendant worked for 27 years in construction. He had not missed any court dates up to that point. The trial court revoked defendant's pretrial release and ordered him detained.

¶ 12    On February 6, 2024, defendant filed a petition for pretrial release. The trial court held a hearing the same day at which defendant further proffered that he had joint custody of his six-year-old son and that he was the primary provider for his son, as well as defendant's brother and his brother's son. Additionally, defendant was diagnosed with kidney disease and was at risk for requiring dialysis treatment. Finally, defendant argued that detention was inappropriate because there were no allegations that defendant threatened the complaining witness, and that the detention statute permitted detention in stalking cases only to prevent the fulfillment of a threat. The State gave a proffer consistent with the proffer it gave at defendant's initial detention hearing.

¶ 13    The trial court stated that the fact that an order of protection did not deter defendant's stalking behavior factored into its original determination that defendant would not comply with conditions of pretrial release. Defendant contested the fact that he was served with the order of protection prior to his September 2023 arrest. The trial court denied defendant's petition, finding that defendant's continued detention was necessary. On February 20, 2024, defendant filed notices of appeal for that order for both of his pending cases.

¶ 14    On March 6, 2024, defendant filed a motion to reconsider the trial court's February 6, 2024 order. That motion claimed that the trial court's February 6, 2024 ruling failed to consider multiple factors in section 110-5 of the Code and misapplied the elements that must be met for a defendant charged with stalking to be detained.

¶ 15    The trial court held a hearing on defendant's motion to reconsider on March 8, 2024. Defense counsel argued that the State failed to prove that defendant posed a real and present threat to the safety of the complaining witness or that pretrial detention was necessary to prevent the fulfillment of a threat upon which the stalking charge was based. Defense counsel also argued that defendant had only surveilled the complaining witness but did not harass her, abuse her, physically batter her, or threaten her. Defense counsel repeated the assertion that no order of protection against defendant existed.

¶ 16    The State's recitation of the alleged facts of this case included several facts that were not mentioned at the initial detention hearing. According to the State, even while defendant and the complaining witness were dating, defendant would frequently check on the complaining witness or follow her. If she did not answer her phone, he would look for her, and if he could not locate her, he would send her text messages or drive past her home. The State also claimed that defendant made a statement during a custodial interrogation that he was served an order of protection on September 6, 2023, by the Riverdale Police Department. The defendant attempted to contact the complaining witness two days later.

¶ 17    The trial court denied defendant's motion to reconsider, finding that defendant should remain detained on both of his pending cases. It noted that pretrial services scored defendant a six out of six for "new criminal activity," the highest possible score, and a three out of six for "failure to appear." Regarding 23-CR- 11239, the trial court found that the State had shown by clear and convincing evidence that: (1) there was clear and convincing evidence that defendant committed a detainable offense; (2) defendant poses a threat to the complaining witness; and (3) no conditions or combination of conditions would mitigate that threat. Regarding 21-CR-8251, it reasoned that

it was likely defendant would be charged with a new felony or Class A misdemeanor if released and that it was unlikely defendant would comply with pretrial conditions of release. Defendant filed two notices of appeal, one for each case, on March 22, 2024, and this appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant raises two claims. First, he asserts that the trial court erred in finding that no conditions of pretrial release could mitigate the threat he posed to the complaining witness in 23-CR-11239. Second, he argues that the trial court erred in finding that no conditions of pretrial release would prevent him from being charged with another felony or Class A misdemeanor in 21-CR-8251. We address these in turn.

¶ 20    Regarding pretrial detention, the Code provides different standards depending on the procedural state of defendant's detention. At an initial pretrial detention hearing, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that defendant committed a detainable offense; (2) defendant poses a real or present threat to the safety of any person or persons, or the community, based on specific, articulable facts of the case; and (3) no condition or combination of conditions found in section 110-10 of the Code can mitigate that threat. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 21    However, defendant did not appeal and does not challenge the September 2023 order which ordered his detention. Instead, he challenges the trial court's denial of a motion to reconsider the February 6, 2024 order, which denied a petition for pretrial release. That petition invoked a separate section of the Code which requires the trial court to, at every subsequent appearance, "find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the

- 6 -

defendant's willful flight from prosecution." *Id*. § 110-6.1(i-5). In other words, defendant was not challenging whether the State met its burden of proof at the initial detention hearing, but whether defendant's continued detention was necessary.

¶ 22    The trial court's oral ruling denying defendant's motion to reconsider as to 23-CR-11239 made multiple factual findings in line with the State's burden at an initial detention hearing rather than the standard necessary for continued detention. Compare 725 ILCS 5/110-6.1(e) with 725 ILCS 5/110-6.1(i-5). As we previously held, and for reasons we need not repeat here, the finding required by subsection 110-6.1(i-5) of the Code is effectively subsumed by the elements the State must prove at a detention hearing. *People v. Thomas*, 2024 IL App (1st) 240479, ¶¶ 13-14. "Thus, when the trial court found that the State presented clear and convincing evidence on all three elements required by section 110-6.1(e), that finding necessarily encompassed the continued detention finding required by section 110-6.1(i-5)." *Id*. ¶ 14. Moreover, a reviewing court may affirm on any basis in the record. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 23 (citing *In re Gabriel W*., 2017 IL App (1st) 172120, ¶ 31). Thus, the question is whether defendant's continued detention was necessary to avoid a real and present threat to the safety of any person, persons, or the community. The determination about whether continued detention is necessary under section 110-6.1(i-5) of the Code is one left to the sound discretion of the trial court. *Thomas*, 2024 IL App (1st) 240479, ¶ 16; *People v. Casey*, 2024 IL App (3d) 230568, ¶ 14. The trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the trial court. *Saucedo*, 2024 IL App (1st) 232020, ¶ 36.

¶ 23    Defendant was originally released on bond after being charged with numerous counts of violating animal owner duties and accused of neglecting multiple dogs—an offense of which he has been convicted in the past. He was returned to custody after being accused of stalking his ex-girlfriend and stealing her car. The record is replete with evidence of defendant's alarming behavior while subject to the conditions of his pretrial release including attempting to gain access to the complaining witness's vehicle and apartment, following her when she took her daughter to school, and, of course, ultimately stealing her car and leading her on a harrowing trip to reclaim it. The conditions of defendant's pretrial release for 21-CR-8251 did not deter him from engaging in this behavior as alleged. Indeed, as the State noted, this is not the first time defendant has been accused of stalking, having been convicted of it once before. Furthermore, although defendant claimed that no documentation existed to show that defendant was ever served with an order of protection, the State countered by claiming that defendant admitted in a custodial interrogation to being served with the order on September 6, 2023. Defendant did not refute that assertion, and it took only two days before he allegedly violated that order. Even if it is true that the order was never served on defendant, the remainder of the allegations against defendant are sufficient to justify his continued detention.

¶ 24    The trial court's reasoning that conditions of release would not mitigate the threat defendant poses to the complaining witness are well-grounded in the facts of this case. Being criminally sanctioned for stalking in the past did not deter defendant from once again allegedly engaging in the same behavior. Likewise, the conditions of his pretrial release and the possibility of having his bail revoked did not stop him from engaging in a frightening course of conduct. The trial court clearly believed that releasing defendant again would simply invite history to repeat

itself or worse, and the allegations in this case support that belief. The determination that defendant's continued detention was necessary to avoid a threat to the complaining witness was not arbitrary, fanciful, or unreasonable, nor was it a position with which no reasonable person could agree. *Saucedo*, 2024 IL App (1st) 232020, ¶ 36.

¶ 25    That brings us to defendant's second contention, which is that the trial court erred in finding that no conditions would prevent defendant from being charged with a future felony or Class A misdemeanor with respect to 21-CR-8251. Defendant's memorandum cites the section of the Code that outlines the State's burden of proof at a hearing to revoke pretrial release. See 725 ILCS 5/110-6(a). But like the first issue, defendant has not appealed or challenged the September 2023 order that revoked his pretrial release in 21-CR-8251. Instead, defendant sought his release from detention. Like section 110-6.1(i-5) of the Code, section 110-6 of the Code also contains a provision that governs the continued necessity of detention following the revocation of pretrial release. That provision states: "At each subsequent appearance of the defendant before the court, the judge must find that continued detention under this Section is necessary to reasonably ensure the appearance of the defendant for later hearings or to prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(j) (West 2022). It stands to reason that this finding would also entail the same deference to the trial court's discretion as the finding required by section 110-6.1(i-5) of the Code. See *Thomas*, 2024 IL App (1st) 240479, ¶ 16.

¶ 26    Regarding 21-CR-8251, the trial court found that it was "unlikely that the defendant would not pick up a new third pending felony offense or Class A misdemeanor" and "unlikely that the defendant would comply with any pretrial release conditions." The reasoning recited in our

analysis of defendant's first claim is equally applicable here. The allegations against defendant demonstrate a willingness to commit multiple additional felony offenses while subject to the conditions of pretrial release. Indeed, the trial court also noted that defendant's prior criminal history contained multiple instances of probation violations. The trial court's determination regarding the necessity of continued detention in 21-CR-8251, too, was well-reasoned and not an abuse of discretion.

¶ 27                          III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the trial court's judgment which ordered that defendant remain detained pretrial.

¶ 29    Affirmed.